UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
BRADY COHEN, individually and on behalf of all  :
others similarly situated,                      :
                                                :
                Plaintiff,     :   Case No. 17-CV-09325
                                                :   Case No. 17-CV-09389
   against                                      :   Case No. 17-CV-09391
                                                :   (Hon. William H. Pauley, III)
CASPER SLEEP, INC. and                          :
NAVISTONE, INC.,                                :
                                                :   **ECF CASE**
                Defendants.    :
                                                :
------------------------------------- X
BRADY COHEN, individually and on behalf of all  :
others similarly situated,                      :
                                                :
                Plaintiff,     :
                                                :
   against                                      :
                                                :
CHARLES TYRWHITT, INC. and                      :
NAVISTONE, INC.,                                :
                                                :
                Defendants.    :
                                                :
------------------------------------- X
BRADY COHEN, individually and on behalf of all  :
others similarly situated,                      :
                                                :
                Plaintiff,     :
                                                :
   against                                      :
                                                :
NEW MOOSEJAW, LLC. and                          :
NAVISTONE, INC.,                                :
                                                :
                Defendants.    :
                                                :
------------------------------------- X

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION
AND IN FURTHER SUPPORT OF
DEFENDANTS CASPER SLEEP, CHARLES TYRWHITT AND NEW MOOSEJAW'S
JOINT MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINTS**

April 10, 2018

**COOLEY LLP**
Michael G. Rhodes (pro hac vice)
Ian R. Shapiro
Kyle C. Wong (pro hac vice)
Max A. Bernstein (pro hac vice)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile:   (415) 693-2222
rhodesmg@cooley.com
ishaprio@cooley.com
kwong@cooley.com
mbernstein@cooley.com
*Attorneys for Defendant Casper Sleep
          and New Moosejaw*

**PROSKAUER ROSE LLP**
Margaret A. Dale
Daryl G. Leon
Eleven Times Square
New York, New York 10036-8299
Tel. 212.969.3000
Fax 212.969.2900
mdale@proskauer.com
dleon@proskauer.com
*Attorneys for Defendant Charles Tyrwhitt*

2

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

LEGAL ARGUMENT .....................................................................................................................2

I.    FAILURE TO STATE A CLAIM UNDER THE WIRETAP ACT (COUNTS I-V)........2

     A.    Retailer Defendants Were Parties To The Communications................................2

     B.    Section 2512 of the Wiretap Act..............................................................................4

II.   FAILURE TO STATE A CLAIM UNDER THE STORED COMMUNICATIONS ACT (COUNT VI)....................................................................5

     A.    The Complaints' Allegations Do Not Meet Rule 8. ...............................................5

     B.    Plaintiff's Cell Phone Is Not A "Facility" Under The SCA................................5

     C.    No Access Of Electronic Communications In Electronic Storage. ......................6

III.  FAILURE TO STATE A CLAIM UNDER THE GENERAL BUSINESS LAW (COUNTS VII-VIII)..............................................................................................................7

     A.    Plaintiff Does Not Allege an Actionable Injury. ....................................................7

          i.    Collection of information alleged is not an actionable injury...................7

          ii.   Plaintiff does not allege any of his information was collected. .................9

     B.    Plaintiff Does Not Allege a Deceptive Practice. ..................................................10

CONCLUSION..............................................................................................................................10


Case 1:17-cv-09391-WHP   Document 45   Filed 04/10/18   Page 4 of 17

## **TABLE OF AUTHORITIES**

Page(s)


**Cases**

*Amaya v. Bregman*,
   186 F. Supp. 3d 1280 (D.N.M. 2016) ................................................................................5

*Anonymous v. CVS Corp.*,
   728 N.Y.S.2d 333 (Sup. Ct. N.Y. Cty. 2001) .....................................................................7

*Becker v. Toca*,
   2008 WL 4443050 (E.D. La. Sept. 26, 2008) ....................................................................6

*Bogosian v. All Am. Concessions*,
   2008 WL 4534036 (E.D.N.Y. Sept. 30, 2008) ...................................................................9

*Bose v. Interclick, Inc.*,
   2011 WL 4343517 (S.D.N.Y Aug. 17, 2011) ....................................................................8

*Caro v. Weintraub*,
   618 F.3d 94 (2d Cir. 2010) .................................................................................................2

*Chance v. Avenue A, Inc.*,
   165 F. Supp. 2d 1153 (W.D. Wash. 2001) .........................................................................6

*Cherny v. Emigrant Bank*,
   604 F. Supp. 2d 605 (S.D.N.Y. 2009) ..........................................................................8, 10

*DirecTV, Inc. v. Deskin*,
   363 F. Supp. 2d 254 (D. Conn. 2005) ................................................................................5

*DirecTV, Inc. v. Lewis*,
   2004 WL 941805 (W.D.N.Y. Jan. 6, 2004) .......................................................................5

*DirecTV, Inc. v Pepe*,
   431 F.3d 162 (3d Cir. 2005) ...............................................................................................5

*DirecTV, Inc. v. Robson*,
   420 F.3d 532 (5th Cir. 2005) .............................................................................................5

*DirecTV, Inc. v. Treworgy*,
   373 F.3d 1124 (11th Cir. 2004) ..........................................................................................5

*In re DoubleClick Privacy Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........................................................................2, 3, 4


ii

*Expert Janitorial, LLC v. Williams*,
  2010 WL 908740 (E.D. Tenn. Mar. 12, 2010) ................................................................6

*Flowers v. Tandy Corp.*,
  773 F.2d 585 (4th Cir. 1985) ........................................................................................5

*Garcia v. City of Laredo*,
  702 F.3d 788 (5th Cir. 2012) ........................................................................................6

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
  806 F.3d 125 (3d Cir. 2015) ................................................................................ 2, 3, 4

*Kaufman v. Nest Seekers, LLC*,
  2006 WL 2807177 (S.D.N.Y. Sept. 26, 2006)...............................................................7

*Low v. LinkedIn Corp.*,
  2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ............................................................10

*Luis v. Zang*,
  833 F.3d 619 (6th Cir. 2016) ........................................................................................5

*Meyerson v. Prime Realty Services, LLC*,
  796 N.Y.S.2d 848 (Sup Ct. N.Y. Cty.  2005) ...........................................................4, 8

*Molefe v. Verizon N.Y., Inc.*,
  2015 WL 1312262 (S.D.N.Y. Mar. 24, 2015) ..............................................................5

*Mount v. PulsePoint, Inc.*,
  2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016), *aff'd*, 684 F. App'x. 32 (2d Cir.
  2017), *as amended* (May 3, 2017) ...............................................................................8

*Smith v. Chase Manhattan Bank, USA, N.A.*,
  293 A.D.2d 598 (2d Dep't 2002) ............................................................................8, 10

*Strumlauf v. Starbucks Corp.*,
  192 F. Supp. 3d 1025 (N.D. Cal. 2016).................................................................. 9, 10

*Sussman v. ABC, Inc.*,
  186 F.3d 1200 (9th Cir. 1999) ......................................................................................2

*TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*,
  260 F. Supp. 3d 154 (D.P.R. 2016) ..............................................................................3

*United States v. Jiau*,
  734 F.3d 147 (2d Cir. 2013) .........................................................................................3

*United States v. Warshak*,
  631 F.3d 266 (6th Cir. 2010) ........................................................................................2

*Williams v. Rosenblatt Sec. Inc.*,
   136 F. Supp. 3d 593 (S.D.N.Y. 2015) ................................................................................. 7

**Statutes**

18 U.S.C.
   § 2510(17) ............................................................................................................................. 7
   § 2511(2)(d) .................................................................................................................. 2, 3, 4
   § 2512 ................................................................................................................................ 4, 5
   § 2512(1) ............................................................................................................................... 4
   § 2512(1)(b) .......................................................................................................................... 5
   § 2520 ................................................................................................................................... 5
   § 2520(a) ............................................................................................................................... 5

**Other Authorities**

Fed. R. Civ. P. 8 ....................................................................................................................... 1, 5

**PRELIMINARY STATEMENT**

As shown in their Motion to Dismiss (Dkt. 39; the "Motion" or "Mot."), the Retailer Defendants[1] cannot be liable under the Wiretap Act because they were parties to the alleged communications between Plaintiff and their Websites. Plaintiff's Opposition ("Opposition" or "Opp.") essentially concedes this point, but tries to claim that the exception does not apply because the Retailer Defendants' interception of communications was for an unlawful purpose. Plaintiff's Complaints, however, allege that Retailer Defendants collected data from these communications to market directly to him. Plaintiff cannot turn this common commercial conduct into something illicit, particularly when he has failed to allege facts that the Retailer Defendants' "primary motivation" was criminal or tortious, as the law requires.

Plaintiff's Stored Communications Act claim also fails. The Opposition does not clarify Plaintiff's vague allegations that "tracking files" on his device were "scanned" and fails to rebut the Retailer Defendants' showing under Rule 8. Moreover, both the law's text and precedent reject the argument that Plaintiff's mobile device is a "facility" as required for an SCA claim.

Finally, Plaintiff's claims under the New York General Business Law are without merit. The kind of data collection for marketing purposes alleged in the Complaints is routine and common, not deceptive. Moreover, Plaintiff claims his actual injury is an "invasion of privacy," but fails both to show that the information collected is the type of highly sensitive, confidential information protected under the GBL and that any such information of *his* was even collected.

---

[1] Unless otherwise stated, capitalized terms have the same meaning as in the Motion.

# **LEGAL ARGUMENT**

I.    **FAILURE TO STATE A CLAIM UNDER THE WIRETAP ACT (COUNTS I-V)**

    A.    **Retailer Defendants Were Parties To The Communications.**

The Retailer Defendants cannot be liable under the Wiretap Act because they were parties to all of Plaintiff's alleged communications with the Websites. (Mot. at 5.) The Opposition effectively concedes this,[2] and focuses on a narrow exception to the one-party consent rule: a party to a communication can be liable under the Wiretap Act only if the "communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). However, the alleged interception itself cannot be the wrong; rather, it must have been intended to accomplish some other, "independent" tort. *See Caro v. Weintraub*, 618 F.3d 94, 96 (2d Cir. 2010). Even a tortious invasion of privacy will not suffice, *see In re Google Inc. Cookie Placement Consumer Privacy Litig.* ("*In re Google*"), 806 F.3d 125, 145 (3d Cir. 2015) ("[I]nvasion of privacy through intrusion upon seclusion . . . is a tort that occurs through the act of interception itself" (internal quotation and citation omitted)); and the intent to commit this independent tort must have been the party's "primary motivation" for interception. *In re DoubleClick Privacy Litig.* ("*In re DoubleClick*"), 154 F. Supp. 2d 497, 514-15 (S.D.N.Y. 2001)). "[P]laintiff cannot establish . . . a 'criminal or tortious' purpose simply by proving that the defendant committed any tort or crime," but rather he must allege that "the purpose for interception—its intended use—was criminal or tortious." *Id.* at 516 (quoting *Sussman v. ABC, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)).

---

[2] Plaintiff still asserts that "some of the communications at issue," such as online forms (e.g., a "sign up" page), were not with the Website but with his ISP until he presses "Submit." (Opp. at 9.) But this does not follow: ISPs are not participants in a communication; they are the means by which parties communicate. *See United States v. Warshak*, 631 F.3d 266, 286 (6th Cir. 2010).

The Complaints fail to allege independent tortious or criminal conduct, separate and apart from the alleged act of interception itself. Plaintiff also basically concedes that the Retailer Defendants were not motivated by any desire to commit a criminal or tortious act – the Complaints expressly state that the Retailer Defendants collected Plaintiff's communications with their Websites in order to provide Plaintiff with direct mail marketing – an entirely benign, common, and legal endeavor. (Compls. ¶ 18.) This is not the sort of tortious or criminal conduct contemplated by the Section 2511(2)(d) exception, which is "confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party." *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (citing *In re DoubleClick*, 154 F. Supp. 2d at 514-15). The Retailer Defendants did not intend to injure users of their Websites, but wanted only to sell them goods.

Plaintiff uses his General Business Law ("GBL") Section 349 claims to support his tortious intent argument, but this falls flat. (Opp. at 7.) Not only does Plaintiff fail to allege a violation of the GBL, as addressed in Section III, *infra*, but the purported GBL violation does not show the necessary criminal or tortious purpose. Plaintiff does not cite, nor are Retailer Defendants aware of, any authority to the contrary. Plaintiff also fails to explain how the GBL allegations establish that Defendants' primary motivation for their conduct was an intention to commit a tort separate and apart from the interceptions themselves and intended to injure the Website users. *See In re Google*, 806 F.3d at 145 ("invasion of privacy" tort not independent from the interception under Section 2511(2)(d)).

The cases cited by Plaintiff do not support his arguments. In *TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*, 260 F. Supp. 3d 154, 158-59, 165 (D.P.R. 2016), an employee stole his employer's "confidential information" to establish a competitive business – a clear independent

3

tortious purpose as it was intended to harm the employer.  Likewise, Plaintiff's reliance on *Meyerson v. Prime Realty Services, LLC*, is even more attenuated, as that case did not address the Wiretap Act, and involved the affirmative, fraudulent intent by a "landlord [who] deceptively represented that [a tenant] was required by law to provide personal and confidential information, including her birth date and social security number, in order to . . . avoid eviction." 796 N.Y.S.2d 848, 854 (Sup. Ct. N.Y. Cty. 2005).  Nothing similar is alleged here.

Finally, Plaintiff also argues that Casper, but not Tyrwhitt or Moosejaw, allegedly violated its Privacy Policy, nullifying the party exception.  However, the allegations do not show that Casper violated its Privacy Policy (*see* Section III(A), (B), *infra*) and, even if its conduct was inconsistent with its Privacy Policy, Plaintiff still has not pled **tortious** or **criminal** conduct or intent, distinct from the alleged gathering of information.  Plaintiff relies on *In re Google* and *In re DoubleClick*, but these cases undermine his argument.  (Opp. at 9.)  In *In re Google*, the court held that, despite alleging an "invasion of privacy contemplated by California law" and violation of defendant's privacy policy, plaintiffs still had not pled tortious or criminal purpose sufficient for Section 2511(2)(d).  806 F.3d at 151, 145.  Similarly, *In re DoubleClick* held that defendant DoubleClick did not collect information with tortious "purpose;" defendants merely "execut[ed] a highly-publicized market-financed business model in pursuit of commercial gain—a goal courts have found permissible under § 2511(2)(d)." 154 F. Supp. 2d at 518.

### B. Section 2512 of the Wiretap Act.

Preliminarily, the Retailer Defendants are exempt from Wiretap Act liability because they were parties to the alleged communications and, therefore, Plaintiff's claims under Section 2512 are moot.  Nevertheless, the Court should follow the substantial weight of authority, including from within this Circuit, rejecting a private right of action under Section 2512 of the Wiretap Act because violations of Section 2512(1) are subject to criminal, not civil, liability.

The cases in the Second Circuit addressing this question have found against Plaintiff. *DirecTV, Inc. v. Deskin*, 363 F. Supp. 2d 254, 260 (D. Conn. 2005) and *DirecTV, Inc. v. Lewis*, 2004 WL 941805, at *4-5 (W.D.N.Y. Jan. 6, 2004) both considered whether there may be a private right of action under Section 2512, and both concluded that there is no basis for finding a cause of action to enforce Section 2512(1)(b).

Indeed, even the *Luis v. Zang* decision cited by Plaintiff "conclude[d] that the [Third, Fourth, Fifth and] Eleventh Circuit[s] and those other courts that have adopted a narrow reading of § 2520 have the better end of this debate." 833 F.3d 619, 636 (6th Cir. 2016); *see also DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1129 (11th Cir. 2004) ("[T]he language of section 2520(a) does not create a private right of action against a person who possesses a device in violation of section 2512(1)(b)."); *DirecTV, Inc. v Pepe*, 431 F.3d 162, 166 n.8 (3d Cir. 2005); *DirecTV, Inc. v. Robson*, 420 F.3d 532 (5th Cir. 2005); *Flowers v. Tandy Corp.*, 773 F.2d 585, 588 (4th Cir. 1985); *Amaya v. Bregman*, 186 F. Supp. 3d 1280, 1293 (D.N.M. 2016).

II.   **FAILURE TO STATE A CLAIM UNDER THE STORED COMMUNICATIONS ACT (COUNT VI)**

  A.   **The Complaints' Allegations Do Not Meet Rule 8.**

Plaintiff's "scanning" claim lacks any explanation of what occurred or was scanned, and merely repeats unsupported allegations, which are insufficient to sustain a claim. *Molefe v. Verizon N.Y., Inc.*, 2015 WL 1312262, at *3 (S.D.N.Y. Mar. 24, 2015).

  B.   **Plaintiff's Cell Phone Is Not A "Facility" Under The SCA.**

Plaintiff's claim that his mobile phone qualifies as a "facility," as required by the SCA, fares no better. Courts across the country, including in this District, have concluded that a "facility" does not include personal computers that merely use electronic communication services, like email, but rather only includes the systems of the services themselves. (Mot. at 15-16 (collecting cases).) This interpretation comports with the legislative purpose to protect "stored

5

communications in remote computing operations and large data banks," while avoiding irrational results. *Garcia v. City of Laredo*, 702 F.3d 788, 791 (5th Cir. 2012). Tellingly, Plaintiff does not address, let alone distinguish, the decisions cited by the Retailer Defendants.

Instead, Plaintiff focuses solely on the minority of cases that (erroneously) find a personal device can be an SCA "facility." (Opp. at 16-17.) But even these decisions undermine his argument. For example, *Expert Janitorial, LLC v. Williams* and *Becker v. Toca* found that the computers plaintiffs used in their businesses may "qualify as 'facilities'" because those computers acted as servers for the businesses' email service—that is, their computers *provided* an electronic communication service, rather than merely *using* one. *Expert Janitorial, LLC v. Williams*, 2010 WL 908740, at *5 (E.D. Tenn. Mar. 12, 2010); *Becker v. Toca*, 2008 WL 4443050, at *4 (E.D. La. Sept. 26, 2008). Plaintiff makes no such allegation here. Even *Chance v. Avenue A, Inc.* warned that while a personal computer could be an SCA facility, such a reading would authorize *any* website to access plaintiff's computer and communications as a user—an irrational result recognized by other courts. 165 F. Supp. 2d 1153, 1161 (W.D. Wash. 2001).

### C. No Access Of Electronic Communications In Electronic Storage.

**No electronic communications.** The Opposition contains the new claim that "files were placed on Plaintiff's computer in connection with his communication with other websites, [so] they are communications for purposes of his SCA claim." (Opp. at 17.) Yet Plaintiff provides no support for the argument that a file "connected" to a communication is itself a communication.

**Not in electronic storage.** The communications at issue were not in electronic storage when they were allegedly accessed. Plaintiff correctly notes that electronic storage must be temporary, but conclusorily claims that tracking files are "temporary" because they are used by other websites. (Opp. at 18.) The Complaints, however, do not allege that the files were stored

6

temporarily "incidental to [] electronic transmission" or for "backup protection." 18 U.S.C. § 2510(17); *Williams v. Rosenblatt Sec. Inc.*, 136 F. Supp. 3d 593, 607 (S.D.N.Y. 2015).

Finally, Plaintiff's reliance on *Kaufman v. Nest Seekers, LLC* is misplaced: *Kaufman* involved a real estate website that stored communications between its subscribers on its server. 2006 WL 2807177, at *6 (S.D.N.Y. Sept. 26, 2006). The communications were in electronic storage because they were placed on defendant's server to "be accessed and viewed" later when the subscriber logged on. *Id.* at *7 (internal quotation and citation omitted). Here, Plaintiff does not allege any files were stored on a third-party server and that the storage was to facilitate transmission, as required under the SCA.

### III.  FAILURE TO STATE A CLAIM UNDER THE GENERAL BUSINESS LAW (COUNTS VII-VIII)

#### A.  Plaintiff Does Not Allege an Actionable Injury.

Plaintiff fails to claim that he suffered an actual injury, as required by GBL Section 349. Plaintiff's only alleged injury is an "invasion of privacy," purportedly suffered from Defendants' collection of his name, address, and browsing activity. (Opp. at 3, 19.) However, the mere collection of this information for direct marketing purposes is not an injury under GBL Section 349. Plaintiff's Section 350 claim fails for the same reasons and because he does not allege any advertising. Plaintiff's Opposition also makes no valid argument that he satisfied the advertising requirement, and only cites to Section 350 claims in a footnote. (Opp. at 19, n.6.)

##### i.  Collection of information alleged is not an actionable injury.

The collection of information constitutes an actual injury under Section 349 only when it is surreptitious and involves highly sensitive, confidential information, which is not at issue here. First, the information allegedly collected is not highly sensitive, confidential information. Plaintiff's own cited cases suggest the same. In *Anonymous v. CVS Corp.*, the court found injury where CVS surreptitiously acquired information about plaintiff's HIV status. 728 N.Y.S.2d 333,

7

340 (Sup. Ct. N.Y. Cty. 2001). In *Meyerson*, the court found injury where a landlord tricked a tenant into revealing her Social Security number. 796 N.Y.S.2d at 854. In both cases, the information was specially protected by statute due to its sensitivity. Plaintiff alleges nothing of the sort here.

Plaintiff's conclusion that "browsing habits" are sensitive is inaccurate. The Retailer Defendants are only alleged to have tracked visitors *on their own sites* (*see*, *e.g.*, Compls. at ¶ 13), which is entirely common. Plaintiff relies on *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *12 (S.D.N.Y. Aug. 17, 2016), *aff'd*, 684 F. App'x. 32 (2d Cir. 2017), *as amended* (May 3, 2017), but *Mount* merely acknowledges that "aggregated browsing history," across all websites of all kinds, could reveal "intimate details of that user's life" but does not by itself automatically satisfy Section 349. *Id.* No such "intimate details" are involved here. Likewise, in *Bose v. Interclick, Inc.*, defendant was alleged to have circumvented privacy and security settings to spy on users' web activity that users had affirmatively tried to protect, which the court likened to accessing medical information. 2011 WL 4343517, at *8-9 (S.D.N.Y Aug. 17, 2011).

Second, the alleged harm – that Retailer Defendants used the information to market to Plaintiff – is not an actual injury under the GBL. In *Smith v. Chase Manhattan Bank, USA, N.A.*, Chase was alleged to have used and *sold* personally identifiable information of its customers, including not only name and address, but "account or loan numbers, credit card usage, and other financial data," to third-party marketers in violation of its privacy policies. 293 A.D.2d 598, 598-99 (2d Dep't 2002). In dismissing the Section 349 claim for failure to show actual injury, the court explained: "the 'harm' at the heart of this purported class action, is that class members were merely offered products and services which they were free to decline. This does not qualify as actual harm." *Id.* at 599; *see also Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 608 (S.D.N.Y. 2009)

(finding the collection and dissemination of email addresses to advertisers, without further allegation of "misuse," was "insufficient to cause damage to a plaintiff").

### ii. Plaintiff does not allege any of his information was collected.

Even if the collection of address and name information willingly entered on a website could meet Section 349's injury requirement (it cannot), Plaintiff does not allege that *he* actually entered any such information on any of the Websites, or that any Defendant "de-anonymized" *him*. Plaintiff's Opposition misrepresents the allegations in the Complaints when asserting that "Defendants . . . used these methods to 'de-anonymize' Plaintiff in order to 'obtain [his] name[] and home address[], along with detailed data concerning [his] browsing habits,' and (iv) shared this information with 'third parties for their marketing purposes and promotional use.'" (Opp. at 8 (brackets in original).) Plaintiff's use of brackets is misleading, as the Complaints never allege that *Plaintiff's* own name or address were implicated at all, instead alleging generically that Defendants monitored "*visitors* to obtain *their* names." (Compls. ¶ 1 (emphasis added).)

The Opposition calls on the Court to "infer" that Defendants intercepted and transmitted Plaintiff's PII. (*See* Opp. at 20.) However, because Plaintiff failed to allege he entered any actual "PII" on any Website, there is no reasonable inference that it was captured. It seems likely that Plaintiff never entered this information on the Websites, given that he avoided alleging otherwise, even when given the chance to amend after Defendants identified the issue.

Plaintiff's cases supporting his "inference" arguments are unavailing. (Opp. at 20.) These cases did not involve a GBL claim and, in the GBL context, elements cannot be implied. *See*, *e.g.*, *Bogosian v. All Am. Concessions*, 2008 WL 4534036, at *4 (E.D.N.Y. Sept. 30, 2008) ("Defendants should not be required to infer from the pleadings the critical facts."). For example, Plaintiff's analogy to lattes in *Strumlauf v. Starbucks Corp.* does not follow, as the corollary here

9

is equivalent to the *Strumlauf* plaintiff seeking an inference that his latte was under-filled, while refusing to claim he bought a latte.  192 F. Supp. 3d 1025 (N.D. Cal. 2016).

### B.    Plaintiff Does Not Allege a Deceptive Practice.

The Retailer Defendants' use of code to monitor visitors' conduct on their Websites to develop marketing is not "materially deceptive." (Opp. at 21.)  Websites routinely analyze text before a user clicks "submit" or "search," as clearly seen on Google or the Second Circuit's website.[3]  Collecting keystrokes before "submit" is routine commercial behavior. *See*, *e.g.*, *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *4 (N.D. Cal. Nov. 11, 2011).

Finally, the practices described in the Casper Complaint are consistent with Casper's Privacy Policy.  The Policy's definition of Personal Information subsumes the information Plaintiff discusses and the Policy allegedly states it will share said information to "deliver targeted advertising." (Casper Compl. at ¶ 42.)  Plaintiff never substantiates his claim that Casper shared information with NaviStone for *NaviStone*'s marketing purposes, and never points to a single instance in which he received, or was at risk to receive, NaviStone marketing materials based on information supplied to Casper.  Regardless, violating a privacy policy to share information with third party marketers is not injurious under the GBL. *See*, *e.g.*, *Cherny*, 604 F. Supp. 2d at 608; *Smith*, 293 A.D.2d at 599.

### CONCLUSION

For the foregoing reasons, the Retailer Defendants request that the Court grant their Joint Motion to Dismiss Plaintiff's First Amended Complaints in their entirety, with prejudice.

---

[3] When a user types text into a Google search bar, Google predicts the rest of the search term based on aggregated and personal user data.  Similarly, if a user types a letter into the Second Circuit website's search field, it suggests terms.  http://www.ca2.uscourts.gov/.

Dated: April 10, 2018
      New York, New York

**RESPECTFULLY SUBMITTED**

COOLEY LLP

By:    */s/ Michael G. Rhodes*
      Michael G. Rhodes (pro hac vice)
      Ian R. Shapiro
      Kyle C. Wong (pro hac vice)
      Max A. Bernstein (pro hac vice)
      101 California Street, 5th Floor
      San Francisco, CA 94111-5800
      Telephone: (415) 693-2000
      Facsimile: (415) 693-2222
      rhodesmg@cooley.com
      ishaprio@cooley.com
      kwong@cooley.com
      mbernstein@cooley.com
      *Attorneys for Defendants Casper Sleep and New Moosejaw*

PROSKAUER ROSE LLP

By:    */s/ Margaret A. Dale*
      Margaret A. Dale
      Daryl G. Leon
      Eleven Times Square
      New York, New York 10036-8299
      Tel. 212.969.3000
      Fax 212.969.2900
      mdale@proskauer.com
      dleon@proskauer.com
      *Attorneys for Defendant Charles Tyrwhitt*